Harold R. Soden, J.
TMs is a motion for The pleadings present a legal question only.
On October 11, 1962, at about 7:30 a.m., Richard Ashline, age 20, defendant’s insured, was driving his car southerly on New York State Highway Route 9 north of the City of Plattsburgh, New York. Rose Marie Duprey, age 20, and Lester Ashline, age 18, were riding as passengers. This two-lane State highway is *812 the usual width of approximately 20 feet. Proceeding northerly at the time and place was a tractor trailer owned by Smith Transport IT. S. Limited, operated by one William W. Clements. The Richard Ashline car collided with the tractor trailer as a result of which all three persons in the Ashline vehicle were killed, and Clements was injured. Lawsuits were instituted against the Richard Ashline estate by the administrators of the estates of Rose Marie Duprey and Lester Ashline as well as Clements individually. All three actions, to be tried together, were reached for trial at the April 1964 Term of Supreme Court, Clinton County.
Immediately prior to selecting the jury, defendant’s carrier settled the injury action of Clements for $9,000, he being the sole eyewitness to the accident. The policy limits on the Richard Ashline vehicle were $10,000-$20,000, bodily injury, and $5,000, property damage. Usually a young man, 20 years of age, is unable to pay any judgment in excess of his insurance limits. Richard Ashline was apparently no exception.
Following a four-day trial, the jury rendered verdicts of $11,000 each to the administrators of the estates of Rose Marie Duprey and Lester Ashline against the estate of Richard Ash-line. Following entry of the judgments, defendant’s carrier paid $5,500 each to the estate of Rose Marie Duprey and the estate of Lester Ashline, plus their respective interests and costs.
It is the contention of the defendant carrier that they have completely expended any payments owed pursuant to the insurance contract and that the same is exhausted. Defendant carrier claims that it had the contractual right to settle the Clements action and to partially satisfy the judgments in the death actions of Rose Marie Duprey and Lester Ashline and, further, that these partial satisfactions of the judgments, under the circumstances, are full and complete performance on their part of their insurance contract. Defendant carrier further contends that the manner and method of payments undertaken by it, under all the circumstances, were lawful and were not negligent or done in bad faith. Contrariwise, plaintiff contends that the manner and method of payments aforesaid were preferential to Clements, inferred bad faith, and plaintiff claims that the manner and method of payment are not authorized and are contrary to the public policy of the State of New York.
This motion for summary judgment presents the question of the lawful basis and manner of distribution of the proceeds of a liability insurance policy among multiple claimants when the policy limits are inadequate to pay all claims in full.
*813 Neither attorney has presented any ease to support his position. Likewise, this court has been unable to find any precedent or authority which squares with this case. A dissertation of the manner of handling this question in foreign States appears in the American Law Reports (Ann. 70 ALR 2d 416). It seems that some States have distributed proceeds in multiple claim actions on a prorata basis; others have distributed on a basis according to priority of judgment, and still others have upheld the proposition whereby carriers are responsible only for the difference between the policy limits and any settlements effected although it results in a preference to some claimants and is detrimental to others. It would serve no useful purpose to distinguish these cases as all have been decided prior to October 1,1960.
It has long been established that an automobile liability insurance contract imposes no duty upon a carrier to settle a claim or a lawsuit. (Auerbach v. Maryland Cas. Co., 236 N. Y. 247; Streat Coal Co. v. Frankfort Gen. Ins. Co., 237 N. Y. 60.)
Likewise, a carrier is not responsible in damages for negligence in failing to settle a claim within the limits before a recovery of a judgment for an amount over the policy limits, in absence of fraud or bad faith. (Best Bldg. Co. v. Employers’ Liab. Assur. Corp., 247 N. Y. 451.)
It seems to this court that the two matters upon which this question revolves are (1) what is the contractual liability between the parties and (2) what is the public policy of the State of New York?
The policy involved is the New York standard form; the contents of which is controlled by the Legislature of the State of New York through the Superintendent of Insurance. The liability section appears as Part I, and the pertinent parts read as follows:
‘ ‘ To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:
“A. bodily injury, sickness or disease, including death resulting therefrom * * * sustained by any person;
“ B. * * * “ arising out of the ownership, maintenance or use of the owned automobile * * * and the company shall defend any suit alleging such bodily injury * * * and seeking damages * * * even if any of the allegations of the suit are groundless, false or fraudulent; but the company may make such investigation and settlement of any claim or suit as it deems expedient.”
*814 It is obvious that the defendant company did not undertake to pay any and all claims or settle any and all lawsuits up to the limits of the policy. The company contracted only to pay sums which the insured became legally obligated to pay as damages arising out of an automobile accident. Does an insured become legally obligated to pay any and all claims and any and all lawsuits instituted against him? The answer is obvious. The very crux of any lawsuit is to determine whether the insured, in this instance, is legally responsible in damages. This cannot be determined until after a trial by a court of competent jurisdiction. The insured and, therefore his carrier, does not become legally obligated to pay any damages until a judgment is rendered against him. The defendant company does not therefore become legally obligated to pay for any damages prior to a judgment against its insured. This is all they have contracted to pay in behalf of the insured excluding defense, interest and costs.
The defendant company has, by its contract, reserved the right to investigate and settle any claim or lawsuit that it, the company, deems expedient. The company may voluntarily decide to purchase a claim or a lawsuit which it deems expedient for the company to effect. This becomes a voluntary act on the part of the company aside or apart from its contractual liability 1 ‘ to pay all sums which the insured shall become legally obligated to pay as damages. ’ ’ By its decision to purchase a claim or a lawsuit, the company does not have the power or the right to extinguish, to abrogate, or to diminish its contractual liability. If a company is able to effectuate a purchase of all claims and lawsuits arising out of any one accident within the policy limits, that is one thing. On the other hand, if a company deems it expedient for its own benefit to purchase one or more, but not all of the claims arising out of any one accident, it still has the contractual duty and obligation to pay any judgments which have been rendered against the insured as damages arising out of a single accident- — -up to the limits of the policy. The reservation of the right to settle is not a grant of power to legally evade and defeat contractual liability.
The second phase of this question involves the public policy of the State of New York. As of October 1,1960, the Legislature established its State public policy in the Motor Vehicle Financial Security Act (Vehicle and Traffic Law, § 310) when it stated: “ The legislature determines that it is a matter of grave concern that motorists shall be financially able to respond in damages for their negligent acts, so that innocent victims of *815 motor vehicle accidents may he recompensed for the injury and financial loss inflicted upon them.” (Italics added.)
Though the Legislature has nicely set forth the method and manner of distribution of proceeds of liability among multiple claimants where the limits are inadequate to pay all claims in full in respect to vehicles transporting passengers for hire (Vehicle and Traffic Law, § 370) it omitted to do likewise for vehicles not for hire. Nevertheless, the public policy of this State, since October 1, 1960, is established to protect ‘ ‘ innocent victims ” and is silent concerning the insured or the carrier. To this end, the Legislature now has mandated that New York State motorists shall be insured by a standard form of liability insurance contracted with limits of not less than $10,000-$2(),000, bodily injury including death, and $5,000, property damage, for the payment of damages suffered by ‘ ‘ innocent victims ’ ’. When there are three or more lawsuits or claims arising out of one accident and where all claimants sue or recover against one insured vehicle, may a company, for any reason it alone deems expedient, settle one or more claims, have credit therefor, and thereby render a vehicle uninsured or less insured than the limits mandatorily set by the Legislature of the State of New York?
The defendant company, by its method and manner of distribution, demands credit for the purchase of one claim when the policy limits were known by it to be insufficient to pay all claims and thus seeks not only to alter its contractual liability but defeat the very public policy and mandated limits set by the Legislature of the State of New York. Obviously, if the defendant company could pay Clements, under the facts in this case, $9,000, they could pay $10,000. Likewise, if they could pay one claim, they could pay a second for $10,000, thereby rendering the vehicle in this accident uninsured as to the third claimant. May a company arbitrarily, because it believes it is expedient under the circumstances, settle part of the claims arising out of one accident and demand credit therefor, contrary to their contract and the public policy of the State? In doing so, this court believes that the company has violated a legal duty and a mandated obligation. Woven within and throughout the very warp and woof of any contract is the public policy of the State of New York.
Any purchase of a claim or lawsuit by the defendant carrier, which does not extinguish all the claims arising out of one accident, is a voluntary payment, gift or additional insurance and in no way may limit or reduce its contractual obligations nor defeat the mandatory provisions of the Motor Vehicle Security Act.
*816 The manner and method of distributing the insurance fund by the defendant, solely based on its reservation to settle claims and lawsuits where there are multiple claims, would create a preference to one or more claimants leaving an inadequate sum to pay the remaining claimants damages which were legally established by trial as obligations of the insured. Such a distribution is illegal. Defendant’s reservation to purchase a claim or lawsuit may not defeat its contractual liability.
Plaintiff’s motion for summary judgment in the sum of $4,500 is granted, together with the costs of this motion.